# United States District Court
## for the Northern District of Oklahoma

Case No. 22-cv-444-JDR-SH

Columbia Mutual Insurance Company,

*Plaintiff/Counterclaim Defendant*,

*versus*

Baloru Enterprises, LLC; Baloru Properties, LLC,

*Defendants/Counterclaimants*.

### OPINION AND ORDER

In November 2021, Baloru Enterprises, LLC's Pine Street building was broken into and vandalized. Dkts. 41 at 8 (¶ 4); 42 at 7 (¶ 10).[1] Baloru[2] filed a claim for the damage with its insurer, Columbia Mutual Insurance Company, and Columbia denied the claim based on the insurance policy's vacancy exclusion. Dkt. 41 at 9 (¶ 6); Dkt. 42 at 7 (¶ 12). Columbia filed this action seeking a declaration that it is not obligated to provide coverage for the loss. Dkt. 1. Baloru brought counterclaims against Columbia asserting that Columbia breached the insurance contract and acted in bad faith when investigating, evaluating, and denying its claim. Dkt. 10.[3] Both parties have moved

---

[1] All citations utilize CMECF pagination.

[2] Baloru Enterprises, LLC owns the Pine Street building. Dkt. 42 at 5 (¶ 1). Baloru Properties, LLC leased the Pine Street building to Baloru Enterprises. Dkt. 42-2. The parties refer to both entities collectively throughout the briefing.

[3] Baloru's counterclaims are currently stayed pending resolution of the coverage question. Dkt. 24.

No. 22-cv-444

for summary judgment on the question of whether the loss is covered under Baloru's policy with Columbia. Dkts. 41, 42. The motions are denied.

I

Although the facts are largely undisputed, the Court finds that issues of fact remain and thereby preclude a grant of summary judgment to either party. Baloru acquired Stow's Office Furniture[4] in September 2018 and began selling new and used office furniture from a retail location on Pine Street in Tulsa, Oklahoma. Dkt. 42-1 at 2-3. One year later, Baloru relocated the retail store to a newly acquired building in Broken Arrow, Oklahoma, but left approximately 220 pieces of used furniture at the Pine Street location. *Id.* at 21. In February 2020, Baloru subleased the Pine Street location to Bargain Outlet. Dkt. 42-3. Bargain Outlet used the space to operate a warehouse and retail store. *Id.*

Before turning the store over to Bargain Outlet, Baloru took inventory of the existing furniture, which Bargain Outlet agreed to sell on consignment. Dkt. 42-1 at 10-12; 42-10. This was the last time Baloru took inventory of its furniture at the Pine Street location before the loss at issue in this case. Dkt. 41-2 at 10-12. When Bargain Outlet sold a piece of Baloru's furniture, it notified Baloru of the sale via phone call or text message. Dkt. 42-1 at 12. Baloru did not keep a record of these consignment sales. *Id.* at 12-13. Bargain Outlet operated in the Pine Street location for over a year but closed by the end of July 2021. Dkt. 41-2 at 31-32. By that time, all the utilities in the Pine Street location were shut off. *Id.* Baloru listed the Pine Street location for sale on September 1, 2021. Dkt. 41-7 at 4. Baloru maintained insurance coverage of the Pine Street location while it was leased by Bargain Outlet.

While Bargain Outlet was in the process of closing, Baloru's insurance agent started working on the insurance renewal for the Pine Street location,

---

[4] Baloru acquired Stow's building, business name, and inventory. Dkt. 42-1 at 2-3, 22.

No. 22-cv-444

the Broken Arrow location, and an Oklahoma City storage location. Dkt. 41-9 at 3. On August 26, 2021, the agent asked Baloru how the Pine Street location was occupied and whether it was vacant.[5] *Id.* at 2. Baloru replied that the Pine Street location was occupied by Stow's Office Furniture. Dkt. 41-9 at 2. Columbia issued a policy covering the three Baloru locations on September 30, 2021. Dkt. 42-5. The occupancy of all three locations was listed as "store." Dkt. 42-5 at 16.

The 2021 insurance policy contained this vacancy condition:

**6. Vacancy**

  **a. Description Of Terms**

   **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

   **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

---

[5] During the previous year's renewal, Baloru's insurance agent told Baloru: "The building mainly needs to be occupied by you as storage or by a tenant you lease to. Occupied by you means 'enough personal property to conduct customary operations.' So long as your storage represents enough activity to not be considered 'Vacant', that is the main thing we want to avoid. Who occupies the building is not as important as the fact that someone is doing business there." Dkt. 48-10 at 2.

3

> (ii) Used by the building owner to conduct customary operations.
>
> (2) Buildings under construction or renovation are not considered vacant.
>
> **b. Vacancy Provisions**
>
> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
>
> (1) [Columbia] will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:
>   (a) Vandalism;
>   (b) Sprinkler leakage, unless you have protected the system against freezing;
>   (c) Building glass breakage;
>   (d) Water damage;
>   (e) Theft; or
>   (f) Attempted theft.
> (2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

Dkt. 42-5 at 39.

On November 4, 2021, a Columbia inspector visited the Pine Street location and noticed that the building was not secure. Dkt. 41-2 at 2-4. The inspector notified Baloru, which then reported to the police that the building had been broken into and vandalized and that copper wiring had been stolen from the building. *Id.* at 2-4, 5-9. Baloru promptly filed a claim with Columbia for the loss. On December 6, 2021, Columbia sent a reservation of rights letter stating that the loss may not be covered by the policy because of the vacancy provision. Dkt. 42-6. Baloru responded on February 11, 2022, with a sworn statement in proof of loss, which argued that the Pine Street location

was "clearly not vacant pursuant to the terms and conditions of the subject insurance policy." Dkt. 41-5; 42-4.

In July 2022, Baloru sold Stow's Office Furniture but retained the real estate. Dkt. 48-2 at 3 (¶ 10). The furniture inventory that had been in the Pine Street location at the time of the break-in was sold with the business. *Id.* Columbia filed this action in November 2022, seeking a declaratory judgment that the policy does not cover the loss. Dkt. 1.

## II

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The Court may address cross-motions for summary judgment together where, as is true here, "the granting of one motion requires the denial of the other." *Turner v. XL Specialty Ins. Co.*, 469 F. Supp. 3d 1197, 1202 (W.D. Okla. 2020) (citation omitted).

## III

Columbia argues that it is entitled to summary judgment for these independent reasons: First, Columbia claims the property was vacant on September 1, 2021, and that the vacancy exclusion precludes coverage. Dkt. 41 at 13-17. Second, Columbia argues that Baloru failed to inform it that the building was vacant and that coverage is therefore properly denied under the concealment, misrepresentation, or fraud endorsement. Dkt. 41 at 17-20. Baloru argues that it is entitled to summary judgment because the Pine Street location was not vacant under the terms of the contract because it was being used

No. 22-cv-444

for "the storage/warehousing of hundreds of items of Stow's furniture inventory." Dkt. 42 at 16.

## A

The Court turns first to the policy's vacancy provision. "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense .... The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991) (citing *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974)). To determine if contract terms are ambiguous, the Court looks to whether the terms are "susceptible to two interpretations on [their] face. This test for ambiguity is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer." *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002) (quotation marks and citations omitted). Simply because "the parties disagree as to the meaning of the terms of the contract does not lead necessarily to the conclusion that the contract is ambiguous." *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1232 (10th Cir. 1999) (quotation marks and citation omitted).

Under Columbia's policy, a building is considered vacant when the tenant, lessee, sublessee, or owner is using less than 31% of the total square footage of the building to conduct its "customary operations." Dkt. 42-5 at 39. The vacancy provision excludes coverage when the building has been vacant for 60 consecutive days prior to the loss. *Id.* The Court finds that Columbia's policy language on the vacancy provision is unambiguous, clear, and consistent. *See, e.g., Saiz v. Charter Oak Fire Ins. Co.*, 299 F. App'x 836, 840 (10th Cir. 2008) (using the ordinary meaning of "customary" to analyze a similar vacancy provision).

The parties do not dispute that the "customary operations" in this case are those associated with the operation of a furniture store. The parties disagree, however, on whether warehousing and storage of furniture is part of

a furniture store's customary operations and whether Baloru was using the location for that purpose at least sixty days prior to the loss. Dkts. 41 at 13-15; 42 at 16-21. If warehousing and storage of furniture is not a customary operation of a furniture store, then the vacancy provision applies, and the policy does not cover the loss unless Baloru was actively using the location for other customary operations.

Whether storage and warehousing is part of Baloru's customary operations is a genuine issue of material fact. Both parties have provided more than a mere "scintilla of evidence" in support of their respective positions. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). Baloru presented evidence that it utilized its Oklahoma City location exclusively for storage. Dkts. 41-2 at 33; 48-1 at 4, 17-18. In addition, Baloru presented evidence that it sold furniture on consignment while Bargain Outlet leased the space and eventually sold all the furniture at the Pine Street location. Dkts. 48-1 at 12; 48-2 at 2-3 (¶¶ 6, 10).

Columbia, in response, presented evidence that the utilities were shut off in the building more than sixty days before the loss [Dkt. 41-2 at 16-17], the furniture in the Pine Street location had not been rotated or inventoried in almost two years[6] [*Id.* at 11, 15], there were no business records of the consignment sales [*Id.* at 13, 15], and the Pine Street location was listed for sale at the time of the loss [Dkt. 41-7 at 4]. The parties' contradictory evidence presents a jury question on the customary operations of a furniture store and whether Baloru was actively using the building for its customary operations. *See, e.g., Imperial Beach Palm, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 14CV639 JLS (JLB), 2015 WL 11401349, at *3 (S.D. Cal. July 8, 2015) (finding that there was a genuine issue of material fact whether the insured "was using the property for business activities as such a company commonly would").

---

[6] Baloru concedes that inventory is a vital component of loss control, balancing books, tax calculations, and keeping general records of stored furniture. Dkt. 41-2 at 12-13.

Columbia argues that even if Baloru was using the Pine Street location for customary business operations, it was not using 31% of the square footage as required by the policy. The parties have conflicting characterizations of the evidence on this issue. Columbia represents that, based on its calculation of the square footage occupied by the furniture, Baloru occupied less than 31% of the building's total square footage. Dkts. 41-6; 41-8. Baloru maintains that the square footage in use was greater than Columbia's calculations because "there were over 225 separate items of Stow's furniture inventory warehoused," and the furniture was dispersed throughout the entire area. Dkt. 48-2 at 2 (¶ 9), 5-171; Dkt. 48-7. This evidence is sufficient to create a genuine issue of material fact because it could reasonably support either parties' characterization of the total square footage in use. Although insurance contract interpretation is a matter of law to be decided by the Court, *see Dodson*, 812 P.2d at 376, these factual issues prevent the Court from applying the insurance policy as a matter of law. *See, e.g., Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (recognizing that there are circumstances where determination of a fact dispute must precede contract interpretation); *see also Imperial Beach Palm, LLC*, 2015 WL 11401349, at *4. Thus, the motions for summary judgment on the vacancy provision are denied.

B

Columbia also argues that it is entitled to summary judgment under the concealment, misrepresentation, or fraud endorsement because it did not know that the Pine Street location was vacant at the time the policy was issued and would not have issued the policy if it had known. Dkt. 41 at 17-20. Baloru responds that it did not notify Columbia that the Pine Street location was vacant because it did not consider the location to be vacant at any time during coverage. Dkt. 48 at 24-26. Resolution of this issue necessarily depends on a finding of whether the Pine Street location was in fact vacant, and the Court has already determined that this is a question of fact. Further, Baloru's subjective belief regarding the use and occupancy of the Pine Street location is a

No. 22-cv-444

question of fact for the jury to determine. Summary judgment on the concealment, misrepresentation, or fraud endorsement is denied.

IV

There are disputed questions on whether the Pine Street location was vacant at the time of the loss. Accordingly, the parties' motions for summary judgment [Dkts. 41, 42] are denied.

DATED this ____ day of March 2024.

JOHN D. RUSSELL
*United States District Judge*

9